UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| SHARI HAMPTON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 1:10 CV 291 |
| ITT COMMUNICATIONS SYSTEMS DIVISION | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Shari Hampton brought suit against defendant ITT Communications Systems Division alleging violations of Title VII and the Equal Pay Act. (DE # 1.) Defendant contends that the parties entered into a settlement agreement whereby defendant would provide consideration to plaintiff and in return plaintiff would dismiss her claims against defendant. (DE # 33 at 1.) Defendant has now moved to enforce the settlement agreement and dismiss the case with prejudice. (DE # 34.)

I. FACTS[1]

On March 21, 2011, Magistrate Judge Roger Cosbey held a status conference with plaintiff and defendant. (DE # 21.) That status conference eventually turned into a settlement conference. (*Id.*) Defendant alleges that during this conference, defendant presented plaintiff with a settlement offer. (DE # 33-1 at 1.) Following the conference, Judge Cosbey appointed counsel for plaintiff after plaintiff requested counsel to assist her in negotiating a settlement. (DE # 22.)

---

[1] These facts are primarily taken from the parties' attorneys' emails. Some information has also been taken from defendant's attorney's affidavit. (DE # 33-1 at 1.) Any facts that have been taken solely from defendant's attorney's affidavit are indicated as "defendant alleges."

On April 20, 2011, plaintiff and defendant met for a second judicial settlement conference. (DE # 25.) Defendant alleges that during that meeting, defendant offered plaintiff a settlement package in exchange for plaintiff's agreement to release her claims against defendant. (DE # 33-1 at 1.) That package included: "(1) a neutral letter of reference; (2) [defendant's] agreement not to oppose [p]laintiff's claims for unemployment compensation; and (3) payment of [p]laintiff's *in forma pauperis* filing fee ($350.00)." (*Id.* at 1-2.) Defendant alleges that plaintiff indicated that she needed more time to consider the offer, and the meeting adjourned without an agreement. (*Id.* at 2.)

On April 27, 2011, plaintiff's appointed counsel sent an email to Judge Cosbey's chambers. (*Id.*) That email stated:

> Please inform the judge that although the settlement documents have not be [sic] exchanged or signed, we appear to have a settlement.

(DE # 33-1 at 5.) On the following day, April 28, 2011, defendant alleges that plaintiff's counsel called defendant's counsel and accepted ITT's offer. (DE # 33 at 2; DE # 33-1 at 2.) On that same day, one of defendant's attorneys sent an email to his co-counsel listing the terms of the agreement:

> [Plaintiff's counsel] just called me and said that we have a deal. We will provide: (1) neutral letter of reference; (2) no challenge to unemployment; and (3) payment of the $350 filing fee.
>
> We have the standard confidentiality, no rehire/employ, non-disparagement clauses. I will draft the settlement agreement.

(DE # 33-1 at 6). A few days later, on May 2, 2011, plaintiff's counsel and defendant's counsel exchanged emails. Defendant's counsel initiated the exchange by emailing plaintiff's counsel:

> Quick question on the filing fee – do we make the check out to the [c]ourt? If I remember correctly, the [c]ourt waived the filing fee.

(*Id.* at 7.) Plaintiff's attorney responded a few minutes later:

> Generally in an *In Forma Pauperis* case, the court initially waives the filing fee, for the [p]laintiff to pay back upon the recovery of any monies. I would suggest that [defendant] pay the filing fee directly to the court.

2

(*Id.*) The exchange continued when defendant's attorney responded a few minutes after that:

> Thanks. Has the court been notified of resolution?

(*Id.*) Defendant's attorney answered in the affirmative:

> I let Judge Cosby's [sic] courtroom deputy know by email last week. If you would like to draft a formal "Joint Notice of Resolution[,]" we can get something on file if you prefer.

(*Id.*)

A few days later, plaintiff's counsel wrote an email to defendant's counsel inquiring about the status of the settlement agreement. (*Id.* at 9.) On May 31, 2011, defendant's counsel sent a draft of a settlement agreement to plaintiff's counsel, asking if plaintiff's counsel had any proposed changes. (*Id.* at 10; DE # 33-2.) Plaintiff's attorney responded on June 14, 2011, indicating that he had sent the settlement agreement to plaintiff on the date he had received it. (DE # 33-1 at 14.) Plaintiff's attorney also said he would check on the status of the agreement with the plaintiff. (*Id.*) On June 15, 2011, defendant's attorney sent a stipulation to dismiss to plaintiff's attorney. (*Id.* at 17.)

On June 27, 2011, plaintiff's attorney emailed defendant's attorney. (*Id.* at 18.) That email stated:

> I spoke with my client this morning regarding the settlement agreement; she was under the impression that there would be a "draft" neutral letter of reference attached to the settlement agreement – can we do that? Also, there is no provision in the agreement specifying that [defendant] will be paying the In Forma Pauperous [sic] filing fee – can you add language to that effect? Call if you want to discuss further. Thanks.

(*Id.*) Later that day, defendant's attorney responded with an updated settlement agreement:

> I have included the *in forma pauperis* language into the consideration section and the revised agreement is attached. I have also attached the neutral letter of reference. I think that covers it. Please forward me the signed Agreement and Stipulation at your convenience and we'll wrap this one up.

3

(*Id.* at 19; DE # 33-3.) On July 18, 2011, Judge Cosbey's courtroom deputy clerk emailed the parties inquiring about the status of the settlement in this case. (DE # 33-1 at 22.) Defendant's attorney responded first, stating:

> *The [p]laintiff has agreed to dismiss her claims against [d]efendant.* Currently, we are waiting for the [p]aintiff to execute the Agreement and the Stipulation to Dismiss. We hope to have this matter fully resolved in short order.

(*Id.* (emphasis added.)) Plaintiff's counsel also responded later that night:

> *[Defendant's counsel] is correct.* The plaintiff has been given a revised version settlement agreement for review and with any luck, we will have this matter finalized soon.

(*Id.* (emphasis added.)) In the weeks that followed, defendant's attorney repeatedly contacted plaintiff's attorney in an attempt to get a signed copy of the settlement agreement. (*Id.* at 41-43.) Plaintiff's attorney indicated that plaintiff was no longer responding to his emails. (*Id.*) Finally, on September 22, 2011, defendant alleges that plaintiff's counsel informed defendant's counsel that plaintiff had refused to sign the settlement agreement. (DE # 33-1 at 3.) A few days later, plaintiff's counsel moved to withdraw as plaintiff's attorney. (DE # 26.) That motion was granted on October 25, 2011. (DE # 31.)

## II.   LEGAL STANDARD

The settlement of a federal claim is "enforced 'just like any other contract' . . . ." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (quoting *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002)). "Whether a settlement agreement is binding is an issue governed by the law of the state in which the parties executed the agreement." *Lewis v. Sch. Dist. # 70*, 648 F.3d 484, 486 n.1 (7th Cir. 2011); *see also Zilberstein v. College*, 286 F. App'x 938, 940 (7th Cir. 2008); *Sims-Madison v. Inland Paperboard and Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004); *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000) ("Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law . . . .").

4

"[W]hen the existence or terms of a settlement agreement are in dispute, the district court should hold an evidentiary hearing to resolve the disputes or ambiguities." *Sims-Madison*, 379 F.3d at 449. However, "'[i]f . . . a court can have reasonable confidence that it knows what the contract means, it ought not put the litigants (and the trier of fact) to the bother, expense, and uncertainty of a trial or other evidentiary hearing.'" *Hakim v. Payco-General Am. Credits, Inc.*, 272 F.3d 932, 935 (7th Cir. 2001) (quoting *Overhauser v. United States*, 45 F.3d 1085, 1087 (7th Cir. 1995)).

Defendant argues that Indiana contract law applies to this dispute. (*See* DE # 33 at 4-5.) Because plaintiff does not dispute that Indiana law applies here, the court will apply Indiana law in determining whether the parties have reached an enforceable settlement agreement. Under Indiana law, settlement agreements "are governed by the same general principles of contract law as any other agreement." *Zukerman v. Montgomery*, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011). The required elements to form a valid contract in Indiana are an offer, an acceptance, consideration, and a manifestation of mutual assent. *In re Paternity of M.F.*, 938 N.E.2d 1256, 1259 (Ind. Ct. App. 2010). The party asserting the existence of the contract bears the burden of proving its existence. *See Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994); *see also OVRS Acquisition Corp. v. Cmty. Health Servs., Inc.*, 657 N.E.2d 117, 125 (Ind. Ct. App. 1995).

Indiana "strongly favors settlement agreements[,]" and "it is established law that if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003). Additionally, an oral settlement agreement may be enforced under Indiana law. *Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind. 2000).

## III.   ANALYSIS

Defendant argues that an oral contract was created on April 28, 2011. (DE # 34 at 1; DE # 33.) Defendant alleges, and plaintiff does not dispute, that on April 20, 2011, at the settlement conference, defendant offered plaintiff "(1) a neutral letter of reference; (2) [defendant's] agreement not to oppose [p]laintiff's claims for unemployment compensation; and (3) payment of [p]laintiff's *in forma pauperis* filing fee ($350.00)" in exchange for the release of plaintiff's claims against defendant. (DE # 33 at 2; DE # 33-1 at 1-2.) Although that offer was not accepted during the settlement conference, on April 27, 2011, plaintiff's attorney sent Judge Cosbey's courtroom deputy clerk an email that stated "we appear to have a settlement." (DE # 33-1 at 5.)

Defendant alleges that on the following day, plaintiff's attorney called defendant's attorney and accepted the offer that had been discussed at the settlement conference. (DE # 33 at 2.) On that same day, defendant's attorney sent an email to his co-counsel explaining that a settlement had been reached and outlining the details of the agreement:

> [Plaintiff's counsel] just called me and said that we have a deal. We will provide: (1) neutral letter of reference; (2) no challenge to unemployment; and (3) payment of the $350 filing fee.
>
> We have the standard confidentiality, no rehire/employ, non-disparagement clauses. I will draft the settlement agreement.

(DE # 33-1 at 6.) The terms of the agreement from that email match what defendant alleges it offered plaintiff at the April 20, 2011, settlement conference.

The subsequent communications between plaintiff's attorney and defendant's attorney also indicate that a settlement agreement was reached. Defendant's attorney emailed plaintiff's attorney in early May 2011 inquiring about the proper recipient of the check for the filing fee. (DE # 33-1 at 7.) Plaintiff's attorney responded that the fee should be paid directly to the court. (*Id.*) On that same day, defendant's attorney asked

6

if the court had been notified of the resolution of the case. (*Id.*) Plaintiff's attorney responded:

> I let Judge Cosby's [sic] courtroom deputy know by email last week. If you would like to draft a formal "Joint Notice of Resolution[,]" we can get something on file if you prefer.

(*Id.*)

Additionally, in July 2011, defendant's attorney provided Judge Cosbey's courtroom deputy clerk with an update on the status of the settlement:

> The [p]laintiff has agreed to dismiss her claims against [d]efendant. Currently, we are waiting for the [p]laintiff to execute the Agreement and the Stipulation to Dismiss. We hope to have this matter fully resolved in short order.

(*Id.* at 22.) Plaintiff's attorney later confirmed the details of that email:

> [Defendant's counsel] is correct. The [p]laintiff has been given a revised version settlement agreement for review and with any luck, we will have this matter finalized soon.

(*Id.*)

All of the elements of a contract under Indiana law were met on April 28, 2011, when plaintiff's attorney called defendant's attorney and accepted the offer. Immediately after defendant alleges that its attorney was contacted by plaintiff's attorney and informed that an agreement had been reached, defendant's attorney emailed his co-counsel informing her that an agreement was reached and outlining the terms of the agreement. (DE # 33 at 2; DE # 33-1 at 6.) The day prior to that email being sent, plaintiff's attorney emailed Judge Cosbey's courtroom deputy clerk and informed her that the parties "appear[ed] to have a settlement." (DE # 33-1 at 5.)

A few days after defendant alleges an agreement was reached, defendant's attorney asked plaintiff's attorney if the court had been notified of resolution. (*Id.* at 7.) Plaintiff's attorney responded that he had informed the court the prior week, but that the parties could get a "Joint Notice of Resolution" on file if defendant's attorney preferred. (*Id.*) In June of 2011, defendant's attorney sent plaintiff's attorney a stipulation to dismiss. (*Id.* at 17.) Finally, in an email updating Judge Cosbey's courtroom deputy clerk, defendant's attorney stated that "[p]laintiff has agreed to dismiss her claims against defendant." (*Id.* at 22.) When plaintiff's attorney responded

7

to that email later that day, he started his email with "[defendant's attorney] is correct." (*Id.*)

The court concludes that the parties reached a settlement agreement on April 28, 2011. These emails would make little sense if the parties had not reached an agreement, and there is ample evidence to support the conclusion that a settlement agreement was reached on that day.

The court also concludes that the terms of the settlement agreement are the terms outlined in defendant's attorney's April 28, 2011, email to his co-counsel: a "1) neutral letter of reference; (2) no challenge to unemployment; and (3) payment of the $350 filing fee" in exchange for plaintiff releasing her claims against defendant. (*Id.* at 6, DE # 33 at 2.) The first settlement agreement document that defendant's attorney sent to plaintiff's attorney included two of the three key terms. (DE # 33-2 at 2-3.) The one provision that was missing, language indicating that defendant would pay the filing fee, was a topic of discussion in two separate email chains. First, on May 2, 2011, defendant's attorney emailed plaintiff's attorney inquiring about the proper recipient of the filing fee check. (DE # 33-1 at 7.) Second, after plaintiff's attorney submitted the first settlement document to his client, he wrote defendant's attorney asking if defendant's attorney could add language "specifying that [defendant] will be paying the In Forma Pauperous [sic] filing fee." (*Id.* at 18.) Plaintiff's attorney did not dispute the two other key terms contained in the settlement document. Instead, he requested that the third term, the only item in the first settlement document missing from defendant's attorney's email to co-counsel, be included in the settlement agreement. This evidence is sufficient to establish the terms of the settlement agreement.

Additionally, the court finds that an evidentiary hearing is unnecessary on this matter. Although plaintiff did not file an affidavit, she did file two briefs in support of her position. The court also reviewed a series of emails from each parties' attorney. Thus, this is not a case where "the only evidence supporting an agreement was the

8

affidavits and briefs of one party's counsel stating that the parties had reached an agreement outside the presence of the court." *Wilson v. Wilson*, 46 F.3d 660, 665 (7th Cir. 1995.) Because the emails from both parties' attorneys indicate that a settlement was reached on April 28, 2011, a hearing is not necessary "to pierce through the attorneys' conflicting affidavits and briefs and determine if the parties had in fact reached an agreement."[2] *Id.*

Plaintiff takes the position that a settlement agreement was not reached on April 28, 2011. (DE # 40 at 2.) Plaintiff does not contend, however, that her attorney either lacked authority[3] to enter into a settlement agreement or did not contact defendant's attorney and agree to a settlement. Plaintiff's primary argument is that an agreement could not have been reached on that day because defendant's first draft of the settlement agreement did not include the language about defendant paying the filing fee or a draft of a neutral reference letter. (*Id.* at 2-3.) Plaintiff argues that because the first draft of the settlement agreement did not contain those two provisions, no agreement could have been reached on April 28, 2011, because the required elements of a contract were not met on that date. (*Id.*, *see* DE # 36 at 2.)

Plaintiff has confused reaching a settlement agreement and reducing that agreement to writing. As noted above, an oral settlement agreement is enforceable

---

[2] Although neither party argues this point, a settlement agreement of a federal employment discrimination claim must be "knowing and voluntary." *Dillard*, 483 F.3d at 507. To determine whether a settlement agreement is knowing and voluntary, a court must look to the totality of the circumstances. *Id.* There is no evidence to indicate that plaintiff's assent to the agreement was not knowing and voluntary, and the court concludes that this requirement has been met.

[3] Even if plaintiff had made this argument, it appears that, at the very minimum, plaintiff's attorney had apparent authority to enter into the agreement because he was specifically appointed by the court for purpose of advising plaintiff on a settlement agreement (DE # 22) and because he was in the position of sole negotiator on plaintiff's behalf. *See Zimmerman v. McColley*, 826 N.E.2d 71, 79-80 (Ind. Ct. App. 2005).

9

under Indiana law. *Acton*, 732 N.E.2d at 809. The fact that the parties had not reduced their agreement to writing does not negate the existence of the original agreement. *McColley*, 826 N.E.2d at 77 n.2.

Additionally, the facts do not support plaintiff's argument. On May 2, 2011, defendant's counsel asked plaintiff's counsel if defendant should make the check paying the filing fee out to the court. (DE # 33-1 at 7.) This is almost two months before plaintiff's attorney requested changes to the settlement agreement document. (*Id.* at 18.) This directly contradicts plaintiff's assertion that defendant paying the filing fee was a new term that had not been agreed to in April 2011. (DE # 36 at 1.) Defendant's attorney's May 2, 2011, email to co-counsel also indicates that defendant paying the filing fee was part of the April 28, 2011, agreement. (DE # 33-1 at 6.)[4]

One of the emails that plaintiff cites also directly contradicts her position. She cites to her attorneys email to defendant's attorney asking that the filing fee language and a copy of the draft neutral letter of reference be added. (DE # 33-1 at 18; DE # 36 at 3.) As noted above, that email states:

> I spoke with my client this morning regarding the settlement agreement; she was under the impression that there would be a "draft" neutral letter

---

[4] Plaintiff also argues that because the initial draft of the settlement agreement did not include a draft of the neutral letter of reference, defendant's offer could not have been accepted on April 28, 2011. (DE # 36 at 1.) However, the first draft of the settlement agreement did include language that stated that defendant would provide a neutral letter of reference. (DE # 33-2 at 3.) This request was simply part of getting the parties' agreement in writing, and because an oral settlement agreement can be enforced without being reduced to writing, this argument must fail. *McColley*, 826 N.E.2d at 77 n.2.

Additionally, plaintiff points to language in a July 18, 2011, email, from her attorney to defendant's attorney (DE # 36 at 2), that indicates that a revised draft of the settlement agreement had been given to plaintiff for review. It appears she is arguing that this also proves there was no agreement on April 28, 2011. (*See id.*) However, as noted above, this exchange was just part of the process of getting the parties' agreement in writing, and does not negate the settlement agreement. *McColley*, 826 N.E.2d at 77 n.2.

>of reference attached to the settlement agreement – can we do that? Also, there is no provision in the agreement specifying that [defendant] will be paying the In Forma Pauperous [sic] filing fee – can you add language to that effect? Call if you want to discuss further. Thanks.

(DE # 33-1 at 18). If the *in forma pauperis* provision had not been part of the original agreement, there would be no reason for plaintiff's attorney to request the *in forma pauperis* provision be added to the settlement agreement.

Plaintiff also argues that an email from plaintiff's counsel to Judge Cosbey's courtroom deputy clerk dated June 27, 2011, shows that no agreement was reached on April 28, 2011. (DE # 36 at 2.) The text of that email stated:

>Please inform the judge that although the settlement documents have not be [sic] exchanged or denied, we appear to have a settlement.

(DE # 33-1 at 5.) Plaintiff focuses on the fact that her attorney used the language "*we appear* to have a settlement." (DE # 36 at 2 (emphasis added).) Plaintiff is mistaken, however, on the date that email was sent. It was sent on April 27, 2011, not June 27, 2011. The "we appear to have a settlement" language is not inconsistent with a finding that the parties reached a settlement agreement on April 28, 2011, as that email was sent the day before the agreement was reached.

Finally, even if the court were to accept as true, for the sake of argument, plaintiff's assertion that no agreement was reached on April 28, 2011, plaintiff would still be bound by the settlement agreement. As noted above, plaintiff contends that the parties did not reach a settlement agreement on April 28, 2011. (DE # 40 at 2.) Her argument focuses on the fact that defendant's original version of the settlement agreement lacked language about defendant paying the filing fee and lacked a draft of a neutral letter of reference. (*Id.* at 3; DE # 36 at 2.) Taking plaintiff's argument as true, the original settlement agreement defendant's attorney sent plaintiff's attorney would have been an offer. (DE # 33-2.) When plaintiff's attorney asked that the filing fee language and a draft of a neutral letter of reference be included in the settlement agreement document, plaintiff would have been making a counter offer, which included the terms of defendant's original offer and the terms plaintiff's attorney requested be added to

that offer. (DE # 33-1 at 18.) Finally, when defendant acquiesced and added those two items to the settlement agreement, defendant would have accepted that counter offer. (DE # 33-3); *see also Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003) ("Assent to the terms of a contract may be expressed by acts which manifest acceptance."). Thus, even accepting plaintiff's argument as true, she would still be bound by the same terms that she denies agreeing to on April 28, 2011.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to enforce settlement agreement (DE # 34) is **GRANTED**. The court finds that the material terms of the agreement are as follows: Plaintiff agrees to dismiss all claims against defendant, and in return, defendant agrees to (1) provide plaintiff with a neutral letter of reference; (2) refrain from opposing plaintiff's claims for unemployment compensation; and (3) pay plaintiff's filing fee ($350.00). Plaintiff and defendant are ordered to execute an agreement that implements the foregoing terms within thirty (30) days of the date of this order. Defendant is also ordered to tender the agreed upon consideration. Once the court is notified of the execution of the settlement agreement, or of either party's refusal to execute the settlement agreement, and the exchange of the agreed upon consideration, the court will order the case dismissed with prejudice.

Additionally, because the court finds that a valid settlement agreement was reached, plaintiff's motion to amend her complaint (DE # 23) is **DENIED AS MOOT**.

**SO ORDERED.**

Date: June 7, 2012

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT